IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ANGELA RENEE ROUTTE, | § |
| | § |
| VS. | §   CIVIL ACTION NO. 4:22-CV-993-P |
| | § |
| COMMISSIONER OF SOCIAL | § |
| SECURITY. | § |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Angela Renee Routte ("Routte") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Routte protectively filed her applications on December 9, 2020, alleging that her disability began on October 2, 2019. (Transcript ("Tr.") 13, 224, 230.) After her applications were denied initially and on reconsideration, Routte requested a hearing before an administrative law judge ("ALJ"). (Tr. 148). The ALJ held a hearing on January 24, 2022, and issued a decision on May 18, 2022, denying Routte's applications for benefits. (Tr. 13-24). On September 8, 2022, the Appeals Council denied Routte's request for review, leaving the

1

ALJ's May 18, 2022 decision as the final decision of the Commissioner. (Tr. 1–4.) Routte subsequently filed this civil action seeking review of the ALJ's decision.

## II.  STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq*. of the SSA, along with numerous regulatory provisions. 20 C.F.R. Pt. 416. Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). And fifth, the

impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.[1]

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991).

### III. ISSUES

In her brief, Routte presents the following issues:

1. Whether there is substantial evidence to support the ALJ's residual functional capacity ("RFC") determination because the ALJ failed to properly evaluate the medical opinion evidence and her testimony; and

2. Whether the ALJ erred in making her credibility assessment by failing to consider Routte's "stellar work history."

(Plaintiff's Brief ("Pl.'s Br.") at 1).

### IV. ALJ DECISION

In her May 18, 2022 decision, the ALJ found that Routte had not engaged in any substantial gainful activity since October 2, 2019, her alleged onset date of disability, and that she met the disability insured status requirements of the SSA through September 30, 2022. (Tr. 16). At Step Two, the ALJ found that Routte suffered from the following "severe" impairments: "agoraphobia; generalized anxiety disorder, with panic symptoms; and major depressive disorder." (Tr. 16 (emphasis omitted)). At Step Three, the ALJ found that Routte did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 16-18).

As to Routte's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she should avoid very loud, level 5 noise; should avoid temp[erature] extremes; and should not drive as part of the job. She can perform simple routine tasks with only occasional interaction with coworkers and supervisors. She can have no interaction with the public. She is able to adapt to infrequent and gradual changes.

(Tr. 18 (emphasis omitted)). Based upon this RFC assessment, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Routte can perform. (Tr. 22). Consequently, the ALJ found that Routte was not disabled. (Tr. 23).

## V.   DISCUSSION

### A. RFC Determination

As to her first issue, Routte argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate her testimony and the medical opinion evidence. (Pl.'s Br. at 6-17). Specifically, Routte argues that the ALJ improperly evaluated Peter Holm Ph.D. ("Dr. Holm")'s consultative psychological opinion and his proposed limitations, and that the ALJ failed to rely on the state agency medical consultants' findings. (Pl.'s Tr. 6-17.) In support, Routte argues that the ALJ's RFC determination is erroneous because it is not consistent with all of Dr. Holm's opinions, nor Routte's subjective complaints, regarding Routte's stress tolerance and social interaction limitations. (Pl.'s Br. at 13-14).

### 1. Dr. Holm's Opinion and Routte's Subjective Complaints

RFC is what an individual can still do despite her limitations.[2] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R.

404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." "When a medical source provides one or more medical opinions[4] or prior administrative medical findings,[5] [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate." 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually. 20 C.F.R. § 404.1520c(b)(1).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 404.1520c(a) (footnotes added). "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he

---

[4] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

[5] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5).

may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'" *Governor*, 2021 WL 1151580, at *7.

In this case, the ALJ spent a substantial amount of time discussing Dr. Holm's opinion and why she agreed or disagreed with various parts of the opinion. (Tr. 16-22). The ALJ stated that she was not "fully persuaded" by Dr. Holm's opinion because it was self-contradicting. (Tr. 21). Specifically, the ALJ found that Dr. Holm's statement that Routte would "have difficulty maintaining concentration to complete tasks" was in conflict with his findings that Routte was cooperative and alert, with logical, coherent, and relevant thinking, without looseness of associations, and that Routte was fully oriented with average estimated intelligence. (Tr. 21, 346-49). Further, the ALJ found that the other medical evidence in the record was inconsistent with some of the limitations Dr. Holm opined. (Tr. 21).

Similarly, the ALJ discussed Routte's subjective complaints and Dr. Holm's reliance on them. (Tr. 21). For example, the ALJ noted that Dr. Holm relied on Routte's statements that she could not be around others and that she had extreme agoraphobia while forming his opinion. The ALJ found that these statements were inconsistent with other evidence in the record, including that: (1) Routte had admitted to a doctor that she had no difficulty interacting with others; (2) she drove herself, alone, to her appointment with Dr. Holm; and (3) Routte's July 2021 statement that she babysat her grandchildren and was planning to visit them at her daughter's house. (Tr. 21, 346-49, 405-13). Finally, the ALJ found it persuasive that at Routte's August 2021 annual mental examination she stated she felt well, only had mild impairments, and was able to function at a regular capacity. (Tr. 21, 405-13).

8

Based on the foregoing, the Court finds that the ALJ properly considered the evidence as a whole, utilizing not only parts of the opinions in the record, but also the other medical evidence in the record, including Dr. Holm's opinion and Routte's subjective statements. The ALJ discussed the evidence in the record in making her RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse,* 925 F.2d at 790. The ALJ properly weighed Dr. Holm's opinions against the other evidence and the record as a whole. The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Moore v. Saul,* No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021). Because there is substantial evidence in the record that supports the ALJ's RFC determination and the ALJ properly considered Dr. Holm's opinion and Routte's testimony, remand is not required.

### 2. The ALJ's Reliance on Medical Opinions

Next, Routte argues that the ALJ substituted her own lay opinion for that of a medical opinion because she did not find Dr. Holm's nor the SAMC's opinions persuasive. (Pl.'s Br. at 14-16). As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." Accordingly, the ALJ was not required to give controlling weight to Dr. Holm's opinion, and, as discussed *supra,* the ALJ properly evaluated Dr. Holm's opinion and explained why she found it somewhat unpersuasive. As to the ALJ finding the SAMC's

opinions unpersuasive, any error was in Routte's favor as the ALJ "found a more restrictive functional capacity regarding [Routte's] mental limitations" than the SAMCs did because of additional evidence received during the course of the administrative hearing. (Tr. 21). Accordingly, the Court finds that the ALJ did not commit reversable error as to this issue.

### B. **Credibility**

Finally, Routte argues that, in addition to the above discussed assertions, the ALJ's credibility determination was flawed because the ALJ failed to consider her "steller work history."[6] (Pl.'s Br. at 17-8). Specifically, Routte argues that her work history prior to her disability lends to her credibility and was erroneously ignored. (*Id.*).

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3P, 2017 WL 5180304, at *3. Once she finds impairment, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(c); SSR 16-3P, 2017 WL 5180304, at *4. A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that she is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529.

---

[6] The Court notes that Routte's argument that the ALJ's credibility analysis was defective because of the ALJ's previously discussed errors in formulating the RFC determination and evaluating the medical evidence in the record. Because the Court already determined that the ALJ did not err in the RFC determination or in evaluating the medical evidence in the record, the Court will not consider such argument.

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of both the objective medical and other evidence in the record, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 16-3P, 2017 WL 5180304, at *10-11. When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3P, 2017 WL 5180304, at *7-8. An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In evaluating Routte's credibility, the ALJ first set out the standard for evaluating credibility. (Tr. 20). Then, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

11

(Tr. 21.) The ALJ then carefully analyzed all the evidence in the record, including the medical evidence and other evidence in the record and compared it with Routte's own testimony. (Tr. 20-22).

In addition, contrary to Routte's claims, the ALJ was aware of her work history. For instance, the ALJ noted that "the claimant reported she was last employed in February 2017 doing office work for the same company for 17 years," and that she could not perform her past work. (Tr. 18-9, 22). While the references to Routte's work history were not made during the credibility determination, it is obvious that the ALJ was aware of Routte's work history during all parts of the disability determination, including the credibility determination. Moreover, work history is one of several factors for the ALJ to consider and any error by the ALJ, if any, in fully considering Routte's strong work history is harmless as substantial evidence supports the ALJ's credibility determination.[7] Thus, remand is not required on this basis.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de

---

[7] In addition, the Court notes that there does not appear to be any controlling Fifth Circuit cases requiring consideration of a "strong work history" to determine a plaintiff's credibility. *Garner v. U.S. Comm'r Soc. Sec. Admin*, No. 1:17-CV-01084, 2019 WL 1088408, at *14 (W.D. La. Feb. 19, 2019). *See also Roberson v. Colvin*, No. , 2015 WL 1408925, at * (N.D. Tex. Mar. 27, 2015) ("[W]hile it may have been better for the ALJ to acknowledge plaintiff's 30-year consistent work history, the failure to reference such in his findings does not mean he was not aware of the history.")

novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **October 3, 2023**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED September 19, 2023.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE